**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**ABERCROMBIE & FITCH, CO.,**

      **Plaintiff,**

                                **Case No. 2:11-cv-1114**
                                **JUDGE SMITH**
  **v.**                              **Magistrate Judge Deavers**

**ACE EUROPEAN GROUP LIMITED,**

      **Defendant.**

---

**ACE EUROPEAN GROUP LIMITED,**

      **Plaintiff,**

                                **Case No. 2:12-cv-1214**
                                **JUDGE SMITH**
  **v.**                              **Magistrate Judge Deavers**

**ABERCROMBIE & FITCH, CO.,** *et al.*,

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on multiple motions filed by the parties, including: Abercrombie's motions for attorneys fees (Docs. 84 and 92 in Case No. 2:11-cv-1114; and Docs. 49 and 54 in Case No. 2:12-cv-1214), ACE's motions to stay enforcement of any defense costs or fees ordered until an appeal may be taken (Doc. 79 in Case No. 1114; Doc. 49 in No. 1214), and ACE's motion to exclude the expert declaration of Frank Ray, Esq. (Doc. 97 in No. 1114). For the reasons that follow, Abercrombie's motions for fees and payment of defense costs are **GRANTED IN PART AND DENIED IN PART**, ACE's motions to stay enforcement of the

judgment while an appeal proceeds are **GRANTED**, and ACE's motion to exclude the expert declaration of Frank Ray is **DENIED**.

## I.  POSTURE AND BACKGROUND FACTS

ACE European Group, Limited provides insurance coverage to Abercrombie & Fitch, Co. and related entities through a policy called the Safeonline Advertisers and Internet Liability Policy. (Doc. 4, Compl. at ¶ 5 in Case No. 2:11-cv-1114).[1]  In 2009, Abercrombie conducted a nationwide Christmas gift card promotion, offering a $25 gift card to consumers who purchased a designated amount of merchandise.  (*Id.* at ¶ 10).  According to Abercrombie, the promotional gift cards expired and had their balance voided out on January 30, 2010. (*Id.).*  Some of the gift cards issued in connection with the promotion, however, had the words "no expiration date" imprinted on them while others had no printed information regarding an expiration. (*Id.* at ¶ 11).

In 2010 and 2011, customers sued Abercrombie and related entities on a variety of legal theories based on the general allegation that they had received gift cards which were dishonored by Abercrombie and related stores. (*Id.* at ¶¶ 13-21).  In all, three separate lawsuits have been brought by customers.  Abercrombie sought for ACE to defend it in the lawsuits and meet its defense costs pursuant to the insurance policy. (*Id*. at ¶¶ 22-23).  ACE entirely denied coverage and neither supplied an attorney nor met any of Abercrombie's defense costs. (*Id*. at ¶¶ 24-38; *see also* Doc. 65, 2d Supp. Compl. at ¶¶ 13-22).

As a result of these denials, Abercrombie brought suit against ACE on November 28, 2011, in the Ohio Court of Common Pleas for Franklin County. (Doc. 1, Ex. B, State Ct. Compl. in Case No. 2:11-cv-1114).  Approximately five hours after Abercrombie filed its lawsuit against

---

[1] The factual and procedural background of this insurance coverage dispute were set forth in detail in this Court's Opinion and Order filed September 13, 2013 (Doc. 71).  That discussion is incorporated by reference herein and is summarized, restated, and supplemented as necessary to resolve the pending motions.

ACE, ACE filed suit against Abercrombie in the Northern District of Illinois, seeking a declaration that was essentially the reciprocal of the relief sought by Abercrombie. (Doc. 1, Compl. in Case No. 2:12-cv-1214).  On December 13, 2011, ACE removed the Ohio Common Pleas case to this Court. (Doc. 1, Not. of Remov.).  On December 10, 2012, the Northern District of Illinois transferred ACE's declaratory judgment case to this Court. (Doc. 32, Entry Granting Transfer).

The pleadings in the record before this Court were supported by documents relevant to construing the policy and deciding whether ACE owed Abercrombie a duty to defend and meet the costs (other than the deductible) of the defense. (*See e.g.*, Doc. 4, Compl. Exs. A-G; No. 1114 Doc. 13, Answer Exs. A-D in Case No. 2:11-cv-1114).  Accordingly, following cross motions for judgment on the pleadings, this Court issued an order deciding, as a matter of law, that ACE had a duty to defend Abercrombie in the underlying lawsuits. *ACE European Group, Ltd. v. Abercrombie & Fitch Co.*, Nos.: 2:12-cv-1214 & 2:11-cv-1114, 2013 U.S. Dist. LEXIS 131269 (S.D. Ohio Sept 13, 2013).  At that point, ACE appealed and then filed motions seeking a stay of enforcement of this Court's order while it appealed to the Sixth Circuit. (Doc. 79 in Case No. 2:11-cv-1114 and Doc. 49 in Case No. 2:12-cv-1214, Mot. to Stay).[2]  As one of the questions posed to the Court of Appeals was whether the Sixth Circuit or this Court had jurisdiction over the case after the attempted appeal, this Court administratively stayed the entire case until the Sixth Circuit decided the jurisdictional question. (Doc. 83 in Case No. 2:11-cv-1114; and Doc. 53 in Case No. 2:12-cv-1214, Admin. Stay Order).

The Sixth Circuit ultimately decided that it lacked jurisdiction because this Court's order, though it "effectively defin[ed] ACE's duty," did not specifically "order[] ACE to advance costs

---

[2] In many, though not all cases, motions and orders were duplicated in both cases.  Where this is so, the Court's first citation to the document shall show both document numbers but thereafter show only the document number in case 2:11-cv-1114.

3

that Abercrombie ha[s] incurred and will incur in the future" or "order ACE to undertake the defense." (Doc. 85 in Case No. 2:11-cv-1114; Doc. 55 in Case No. 2:12-cv-1214, 6th Cir. Decision at 3-4).  Upon dismissal of the appeal, Abercrombie filed a renewed motion for an order requiring ACE to pay Abercrombie's defense costs.  Specifically Abercrombie requests this Court order: ACE "to advance payment to Abercrombie for: (1) the defense costs Abercrombie has incurred to date for the *Boundas*, *White*, and *Seaver* lawsuits; and (2) to pay Abercrombie's defense costs in *Boundas*, *White*, and *Seaver* as they are hereafter incurred." (Doc. 84 in Case No. 2:11-cv-1114; Doc. 54 in Case No. 2:12-cv-1214, 1st Mot. for Fees at 2-3).[3]  Based on the fact that filings by ACE and Abercrombie had indirectly disputed the amount of defense costs due but had not directly briefed the issue, the Court ordered briefing "on the amount of defense costs already incurred by Abercrombie in the underlying lawsuits," including, "the amount that it has actually remitted to its counsel in connection with defending the underlying lawsuits." (Doc. 88 in Case No. 2:11-cv-1114, Doc. 57 in Case No. 2:12-cv-1214, Briefing Order at 4).

Pursuant to that Order, Abercrombie has moved for the Court to order ACE to "pay Abercrombie [] the full amount of defense costs Abercrombie has incurred in the *Boundas*, *White*, and *Seaver* lawsuits less the applicable $250,000.00 deductible . . . ." (Doc. 92 in Case No. 2:11-cv-1114, Doc. 60 in Case No. 2:12-cv-1214, 2d Mot. for Fees at 6).  Abercrombie has additionally moved for an order requiring ACE to pay "the full amount of costs Abercrombie has incurred in these lawsuits vindicating Abercrombie's right to a defense." *Id.*  ACE has responded both substantively and by renewing its request that, in the event the Court orders payment from ACE to Abercrombie, that the Court stay the execution of such order until ACE has an

---

[3] In Abercrombie's motions, the memorandum in support is directly appended to the motion and the page numbering restarts at the beginning of the memorandum.  Thus, when the Court cites to pages 2-3 it is referencing the page numbers printed on the document itself not the page count of the larger document.

opportunity to appeal. (Doc. 96 in Case No. 2:11-cv-1114, Re. in Opp. to 2d Mot. for Fees at 2). ACE also moves to exclude the declaration of Frank Ray, Abercrombie's expert on fees. (Doc. 97 in Case No. 2:11-cv-1114, Mot. in Lim.).

## II.    DISCUSSION

Abercrombie requests that this Court order ACE to pay the amounts it has already expended defending the underlying suits (less the policy deductible), pay for the costs and fees as they are hereafter incurred, and also pay the fees incurred in vindicating its right to have a defense provided for it by ACE.    ACE contests the amounts Abercrombie requests as unreasonable, asks that this Court exclude the testimony of Abercrombie's expert, denies that Abercrombie has any right to recover fees incurred in the cases before this Court, and asks that this Court stay the execution of whatever judgment it imposes while an appeal is taken.  ACE has also moved to exclude the declaration of Frank Ray as Abercrombie's expert on attorneys fees. The Court will address these issues in turn.

### A.    Duty to Defend

ACE continues to challenge the notion that it has a duty to defend Abercrombie in the underlying lawsuits. (Doc. 86 in Case No. 2:11-cv-1114, Re. in Opp. to 1st Mot. for Fees at 4-10).  The Court understands that ACE may feel such arguments are appropriate to preserve matters for appeal, however, reasserting these arguments is not necessary.   The Court has previously ruled that ACE is obligated, according to the terms of the policy, to provide for Abercrombie's defense in the three underlying lawsuits and to that ruling it adheres. *ACE European Group, Ltd.*, 2013 U.S. Dist. LEXIS 131269.  True, "district courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (quoting *Marconi Wireless Telegraph Co. v. United States*, 320 U.S. 1, 47-48 (1943)).  However, the Court declines to do so

here when ACE essentially repeats arguments upon which this Court has already passed. (*Compare, e.g.*, Doc. 86 in Case No. 2:11-cv-1114, Re. in Opp. to 1st Mot. for Fees at 4-10 *with* Doc. 57, ACE Mot. for JOP at 12-20).

"Abercrombie was and is entitled to a defense in the Underlying Lawsuits, and ACE breached its contractual obligation to provide the defense." *ACE European Group, Ltd.*, 2013 U.S. Dist. LEXIS 131269, at *37. The question now, is what exactly that entails.

## B.  ACE Must Pay for Defense of the Entire Underlying Cases

An insurer's duty to defend is broader than and distinct from its duty to indemnify. *See e.g.*, *Socony—Vacuum Oil Co. v. Continental Cas. Co.*, 59 N.E.2d 199, syllabus ¶ 1 (Ohio 1945). When an insurer agrees to defend an insured against any claim alleging facts within coverage, even if groundless, false, or fraudulent, the insurer has a duty to defend an action when the complaint contains an allegation in any one of its claims that could arguably be covered by the insurance policy. *Sanderson v. Ohio Edison Co.*, 635 N.E.2d 19, syllabus ¶ 1 (Ohio 1994); *see also Motorists Mut. v. Trainor*, 294 N.E.2d 874, syllabus ¶ 2 (Ohio 1973); *Sherwin-Williams Co. v. Certain Underwriters at Lloyd's London*, 813 F. Supp. 576, 584 (N.D. Ohio 1993). ACE did exactly that here. "It is our duty to defend a claim against you even if such claim is groundless or fraudulent . . . ." (Doc. 4, Ex. B, Policy at 18). Moreover, once an insurer must defend one claim within a complaint, it must defend the insured on all the other claims within the complaint, even if they bear no relation to the policy coverage. *Preferred Mut. Ins. Co. v. Thompson*, 491 N.E.2d 688, 690 (Ohio 1986). Thus, even though some of the claims in the underlying lawsuits were of a sort that, had they stood on their own, might not have been covered, this Court's prior order did not parse the duty to defend between claims. *ACE European Group, Ltd.*, 2013 U.S. Dist. LEXIS 131269, at *33-34, *37.

6

Despite these principles, ACE asserts that on May 2, 2011, the Northern District of Illinois dismissed, pursuant to Rule 12(b)(6), some of the claims brought by the plaintiffs in one of the underlying cases leaving only claims that are not covered by the policy.  (Doc. 86 in Case No. 2:11-cv-1114, Re. in Opp. to 1st Mot. for Fees at 7-8; Doc. 96, Re. in Opp. to 2d Mot. for Fees at 8-11).  ACE then argues that it is not obligated to pay any defense costs incurred in that case after the dismissal. *Id.*  Abercrombie counters that the Sixth Circuit, in *City of Sandusky v. Coregis Ins. Co.*, 192 F. App'x 355, 362 (6th Cir. 2006), addressed the issue of, "whether an insurer has a duty to defend when the covered claims have been dismissed in a non-final order of summary judgment" and decided that a non-final judgment, even on all covered claims, did not excuse an insurer from its duty to provide a defense.  (S*ee* Doc. 87, Reply in Supp. of 1st Mot. for Fees at 3).  ACE seeks to resist the lure of *Coregis* by pointing out that *Coregis* relied on decisions from Hawai'i and Minnesota and, in so doing, departed from the "majority view" – that an insurer is under a duty to undertake the defense only "until it c[an] confine the claim to a recovery that the policy d[oes] not cover." (Doc. 96 in Case No. 2:11-cv-1114, Re. in Opp. to 2d Mot. for Fees at 8 (quoting *Lee v. Aetna Casualty & Surety Co.*, 178 F.2d 750, 753 (2nd Cir. 1948)).

However, ACE's argument is not persuasive to this Court.  The aforementioned Second Circuit case is not binding on this Court.  Further, in the paragraph preceding that which ACE quotes, Judge Hand wrote, "We do not believe that, had the question been presented to the parties in advance, they would have agreed that the promise to defend did not include all occasions in which the insurer eventually becomes liable to pay." *Lee*, 178 F.2d at 752.  In other words, even Hand recognized that while there remains a possibility an insurer might, at some point, be liable upon a particular claim, the duty to defend remains.  This is consistent with the

view of the Sixth Circuit, that a final judgment is necessary on the insurable claims before the duty to defend dissipates. *Coregis,* 192 F. App'x at 362.  Moreover, Hand remarked, "if there be an ambiguity in the language of the policy, since the choice is between imposing the burden of the defense upon the insurer or the insured, the canon *contra proferentem* must prevail, especially as the case involves construing an insurance policy." *Lee*, 178 F.2d at 753.  In other words, as Hand saw it, the duty was upon the insurance company, if it wished to repudiate its duty to defend, to set forth the conditions for the repudiation plainly in the insurance contract – not rely upon the assumption that if an interlocutory order dismisses insurable claims before final judgment, that they can cease defending.

Other cases upon which ACE relies for their supposed "majority view" also capture the nuances of Hand's opinion set forth above.  For instance, in *Lockwood International B.V. v. Volm Bag Co.*, the Seventh Circuit recognized "that if in the course of litigation the covered claims fall out of the case through settlement or otherwise, the insurer's duty to defend his insured ceases." 273 F.3d 741, 744 (7th Cir. 2001).  However, settlement is not an interlocutory decision or, generally, subject to reconsideration of any kind.  Thus, this is consistent with position taken by the Sixth Circuit – that only final judgments relive an insurer of the duty to defend.  Similarly, in another case ACE cites, the Maryland Special Court of Appeals, explained that "the duty to defend arises as long as the plaintiff in a tort case alleges an 'action that is *potentially covered* by the policy, no matter how attenuated, frivolous, or illogical that allegation may be.'" *Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co.*, 688 A.2d 496, 505-06 (Md. Ct. App. 1997) (quoting *Sheets v. Brethren Mut. Ins. Co.*, 679 A.2d 540, 544 (Md. 1996)). In other words, the Maryland court also realized that while any possibility of coverage remained, the duty to defend persists.  A Rule 12(b)(6) dismissal of covered claims, which may well be

reconsidered before the case ends, does not, under either the Sixth Circuit's view or Hand's view, extinguish the duty to defend.  Indeed, the *Baltimore Gas* case only held that dismissal ended the duty to defend where the plaintiffs and all defendants implicated by the dismissal agreed to a dismissal of all covered claims. *Baltimore Gas*, 688 A.2d at 500.  More damaging still to ACE's "majority view" argument, a case cited by ACE, *Hotel Des Artistes v. Transamerica Insurance Co.*, held the opposite of what ACE seeks to argue. No.: 93-cv-4563, 1994 U.S. Dist. LEXIS 7800, at *10 (S.D.N.Y. June 13, 1994) (quoting *City of Johnstown, N.Y. v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1149 (2d Cir. 1989)) (finding against an insurer who had contended that dismissal of every covered cause of action obviated its duty to defend and remarking, "A court will not relieve an insurer from its duty to defend unless it concludes 'as a matter of law that there is no possible factual or legal basis on which the insurer might eventually be held to indemnify the insured.'").  Though some out-of-jurisdiction cases may support the view ACE prefers, it does not appear to be the clear majority view that ACE claims. *See, e.g.*, *Emp'rs Mut. Cas. Co. v. Donnelly*, 300 P.3d 31, 41 (Idaho 2013); *Meridian Mut. Ins. Co. v. James Gilligan Builders*, No.: 08-cv-1995, 2008 U.S. Dist. LEXIS 109018 (E.D. Pa. June 18, 2009).

Whatever view is properly termed "majority" or "minority," the Sixth Circuit has spoken on the question presented here.  *Coregis* clearly establishes that the duty to defend survives dismissal or disposal of the covered claims unless the order is final. 192 F. App'x at 362.  The dismissal at issue here is not yet final.  (Doc. 86, Ex. A, *Boundas v. Abercrombie & Fitch Stores, Inc.* 10-cv-4866 (N.D. Ill. May 2, 2011) (dismissing some but not all claims pursuant to Federal Rule 12(b)(6)); *Ray Haluch Gravel Co. v. Cent. Pension Fund*, 134 S. Ct. 773, 779 (2014) ("In

the ordinary course, a 'final decision' is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.").  Accordingly, the duty to defend persists.

## C.    Amounts of Payments for Fees Incurred

ACE next argues that the fees Abercrombie seeks to collect for its defense in the underlying civil actions are not reasonable and seeks to limit them on that basis. (Doc. 86 in Case No. 2:11-cv-1114, Re. in Opp. to 1st Mot. for Fees at 10; Doc. 96, Re. in Opp. to 2d Mot. for Fees at 4-5).  Abercrombie argues that ACE, having entirely eschewed its duty to defend, ought to reimburse Abercrombie for however much it has paid defending itself. (Doc. 87 in Case No. 2:11-cv-1114, Reply in Supp. of 1st Mot. for Fees at 4-5; Doc. 92, 2d Mot. for Fees at 2-4; Doc. 100; Doc. 63 in Case No. 2:12-cv-1214, Reply in Supp. of 2d Mot. for Fees at 3-5).

Judge Posner cogently explained the matter:

[Defendant] complains about the amount of defense costs incurred by [Plaintiff]. . . . .  We are unimpressed, as was the district court.  When [Plaintiff] hired its lawyers, and indeed at all times since, [Defendant] was vigorously denying that it had any duty to defend--any duty, therefore, to reimburse [Plaintiff].  Because of the resulting uncertainty about reimbursement, [Plaintiff] had an incentive to minimize its legal expenses (for it might not be able to shift them); and where there are market incentives to economize, there is no occasion for a painstaking judicial review. *Kallman v. Radioshack Corp.*, 315 F.3d 731, 742 (7th Cir. 2002).

. . . .

Furthermore, although [Defendant]'s policy entitled it to assume [Plaintiff]'s defense, in which event [Defendant] would have selected, supervised, and paid the lawyers for [Plaintiff] in the [underlying] litigation, it declined to do so-- gambling that it would be exonerated from a duty to defend--with the result that [Plaintiff] selected the lawyers.  Had [Defendant] mistrusted [Plaintiff's] incentive or ability to economize on its legal costs, it could, while reserving its defense that it had no duty to defend, have assumed the defense and selected and supervised and paid for the lawyers defending [Plaintiff] in the [underlying] litigation, and could later have sought reimbursement if it proved that it had indeed had no duty to defend [Plaintiff]. *Clemmons v. Travelers Ins. Co.*, 430 N.E.2d 1104, 1109 (Ill. 1981); *General Agents Ins. Co. of America, Inc. v. Midwest Sporting Goods Co.*, 812 N.E.2d 620 (Ill. App. 2004).  So presumably it had some confidence in [Plaintiff]'s incentive and ability to minimize legal expenses.

*Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1075-76 (7th Cir. 2004) (parallel citations omitted).  ACE argues that *Taco Bell*, and cases like it, concern unjustifiable failures to provide a defense and, moreover, are not widely accepted or binding upon this Court. (Doc. 96 in Case No. 2:11-cv-1114, Re. in Opp. to 2d Mot. for Fees at 4-5).  However, a review of the cases ACE addresses reveals that the distinction ACE attempts does not hold water and that the Sixth Circuit has looked with favor upon *Taco Bell.*

None of the cases cited by ACE ascribe any special meaning to the phrase, "unjustifiable." *Taco Bell*, 388 F.3d 1069; *Sanderson v. Ohio Edison Co.*, 635 N.E.2d 19 (Ohio 1994); *Foxfire, Inc. v. New Hampshire Ins. Co.*, Nos.: 91-cv-2940, 91-cv-3464, 1994 U.S. Dist. LEXIS 9249 (N.D. Cal. July 1, 1994).  Indeed, only *Sanderson* uses the word. 635 N.E.2d 19, syllabus ¶ 2.  Yet, what all three cases address (and which is also the situation here) is a scenario where an insurer has entirely refused to defend its insured or pay for the defense and then subsequently attempted to second-guess aspects of the insured's litigation – including fees and expenses incurred. *Taco Bell*, 388 F.3d 1069, 1071-72; *Sanderson*, 635 N.E.2d 19, 22-24; *Foxfire, Inc.*, 1994 U.S. Dist. LEXIS 9249, at *2-4, *7-10.  In other words, the logic of *Taco Bell* applies in cases in which an insurer refuses to provide a defense and is later found to have been incorrect in doing so – or, in other words, cases where an insurerer unjustifiably failed to defend. The logic and merit of this interpretation are apparent from a Sixth Circuit case in which an insurer admitted it had a duty to defend and offered to pay defense costs, but did not take an active role in managing the defense or controlling costs.  *Alticor, Inc. v. Nat'l Union Fire Ins. Co.*, 345 F. App'x 995, 999 (6th Cir. 2009).  In that case, the Sixth Circuit used the logic of *Taco Bell* to justify allowing the insurer to second-guess the fees incurred by the insured because the

insured, knowing that the insurer did not dispute its duty to pay for the defense, had little

incentive to economize.  As the Sixth Circuit put it:

> When an insurance company is "vigorously denying that it [has] any duty to
> defend," the insured has "an incentive to minimize its legal expenses (for it might
> not be able to shift them)." *Taco Bell Corp.*[], 388 F.3d [at] 1075-76[].  In such
> cases, the actually incurred fees are a reasonable measure of the damages caused
> by the insurer's wrongful refusal to defend.  In contrast, in this case [the insurer]
> has not wrongfully denied its duty to defend, but only disputes whether the
> amounts that [the insured] claims were necessary to conduct that defense are
> reasonable.
>
> The set of facts presented by this case does not appear to arise often, likely
> because insurers that admit to being under a duty to defend tend to assume control
> of the defense so as to control costs.  It is not clear why [this insurer] did not do
> so, but that does not mean that [the insured] could bill any amount it incurred
> without regard to reasonableness.   [The insured] cannot take [the insurer]'s
> agreement to fund a defense as a blank check for [the insured] to spend whatever
> it desires beyond that which is objectively reasonable.

*Id.*

If ACE had agreed that it had a duty to defend and offered to pay for the defense,

Abercrombie's incentive to economize would have been minimal and ACE could justly dispute

the reasonableness of the fees incurred.  If ACE did not wish to offer to pay for the defense, ACE

could have reserved its argument that it had no duty to defend, provided the defense, and then

sought reimbursement from Abercrombie. *Trainor*, 294 N.E.2d 874, syllabus ¶ 1 ("An insurance

company, which by contract is obligated to defend its insured in a negligence action, may defend

in good faith without waiving its right to assert at a later time the policy defenses it believes it

has, provided that it gives its insured notice of any reservation of rights.").  What ACE cannot do

(but which it attempts), is to altogether deny the duty to defend, leave Abercrombie to its own

devices, and then, when the denial proves incorrect, second-guess how Abercrombie has chosen

to defend and the amounts it has expended in doing so.

Abercrombie hired a large and expensive firm when it engaged Jones Day to defend itself. (Doc. 92, Ex. D, Cupps Dec. at ¶ 2).  The bills for defending the underlying lawsuits, as of the date of the motion for fees, totaled $2,166,500.50. *Id.* at 7.  Even granting the complexity of litigating federal class actions, this is quite a substantial fee and, were circumstances different, the Court might be tempted to examine the hourly rates and hours expended.  However, Abercrombie has paid every penny of that amount – not knowing that this Court would rule that ACE had a duty to defend (or reimburse) and not knowing whether this Court would choose to reduce the fees charged to a sum this Court might feel would be more reasonable. *Id.*  Moreover, Abercrombie has forwarded copies of all bills to ACE. *Id.* at ¶ 5.  Thus, ACE had continual notice of the growing cost of the defense and thus the opportunity, if it felt that its exposure was getting out of hand, to step in, defend the case, and seek reimbursement from Abercrombie later. In short, Abercrombie hired the firm it wanted, worked with them to litigate the defense as it wanted, and paid the firm the amount it apparently thought the service was worth, knowing that there was every chance it might never be reimbursed.  In such a scenario, this Court will not substitute its hindsight judgment on the value of services for that of the paying consumer.

ACE shall reimburse Abercrombie for $1,916,500.50 for the costs of defense incurred and paid thus far (less the $250,000 deductible). *Id.* at ¶ 7.  ACE shall also reimburse Abercrombie for the costs of defense incurred and paid as of the date of this Opinion and Order.

**D.     Amount of Payments for Future Fees Incurred**

With respect to ACE's duty to pay for future costs of defense, however, the rationale of *Taco Bell* is weakened and the Sixth Circuit's statements in *Alticor* resound.  That is, according to *Taco Bell*, when an insurance company is "vigorously denying that it [has] any duty to defend," the insured has "an incentive to minimize its legal expenses (for it might not be able to

13

shift them)" and thus there is little occasion to review the amounts to be reimbursed. *Taco Bell Corp.*, 388 F.3d at 1075-76.   However, as *Alticor* made clear, when the insurer does "not wrongfully den[y] its duty to defend, but only disputes [the reasonableness of] the amounts that [the insured] claims were necessary to conduct that defense" the analysis changes and the insured "cannot take [the insurer]'s agreement to fund a defense as a blank check for [the insured] to spend whatever it desires beyond that which is objectively reasonable." *Alticor*, 345 F. App'x at 999.

As the case presently stands, ACE still denies its duty to defend. (Doc. 86 in Case No. 2:11-cv-1114, Re. in Opp. to 1st Mot. for Fees at 4-10).  Yet, the parties are now aware that, in this Court's view, ACE has a duty to defend and is responsible for the full cost of that defense. Accordingly, the market incentives that operated to ensure the reasonableness of Abercrombie's costs have been drastically weakened if not altogether destroyed.  That is, before this Court ordered (as it now does) ACE to reimburse Abercrombie, Abercrombie likely entertained substantial doubt as to whether it would be able to recover the full cost of its defense and thus had a very good reason to be as economical as it normally would in selecting and paying counsel. Now, however, Abercrombie might feel confident that it will be reimbursed and therefore no longer litigate frugally.

Hence, with respect to future costs, the Court again reiterates its holding that ACE is under a duty to defend and it is ordered to do so.  A number of options are available to ACE in fulfilling that duty: for instance, paying Jones Day, reimbursing Abercrombie, hiring its own counsel, or other options that this Court may not have imagined or considered.  The Court will not micromanage how ACE shall fulfill its duty to defend.  However, the parties are hereby on notice that the market incentives that justified the Court's acceptance of Abercrombie's

payments as sufficient evidence of the reasonableness are no longer in operation.  If questions arise as to the reasonableness of fees incurred after this Order, a more stringent review may be appropriate.

**E.      Fee-shifting for the Instant Litigation**

Abercrombie argues that it is entitled to be reimbursed for attorneys fees expended in the current action vindicating its right to be furnished with a defense. (Doc. 92 in Case No. 2:11-cv-1114, 2d Mot. for Fees at 5-6).  Rulings of the Ohio Supreme Court appear to generally support this proposition.  *See Allen v. Standard Oil Co.*, 443 N.E.2d 497, syllabus ¶ 2 (Ohio 1982) ("When an indemnitor wrongfully refuses to defend an action against an indemnitee, the indemnitor is liable for the costs, including attorney fees and expenses, incurred by the indemnitee in defending the initial action and in vindicating its right to indemnity in a third-party action brought against the indemnitor."); *Trainor*, 294 N.E.2d 874, syllabus ¶ 4 ("Where an insurer wrongfully refuses to defend an insured in a negligence action unless the insured agrees to additional conditions not included as policy provisions, the insured is entitled to recover from the insurer his expenses, including reasonable attorney fees, in defending the action.").

However, the request is premature.  Fees are still being incurred in both this case and the underlying lawsuits.  ACE has advertised its intent to take an interlocutory appeal of this Court's ruling on its obligation to pay fees in the underlying lawsuits. (Doc. 96 in Case No. 2:11-cv-1114, Re. in Opp. to 2d Mot. for Fees at 19).  It would ill-serve judicial economy for this Court to decide this issue now only to revisit it again at the end of the case either for the purpose of adding to the fees awarded or reconsidering whether to award fees at all.  Thus, for now, Abercrombie's motion for attorneys fees and costs is **DENIED**, but may be renewed at the conclusion of this case.

**F.    Stay Enforcement of Order to Pay Abercrombie's Defense Pending Appeal**

ACE previously moved this Court for an Order staying enforcement of this Court's September 13, 2013 Order requiring ACE pay Abercrombie's defense costs and to stay the coverage litigation pending ACE's appeal of this matter to the United States Court of Appeals for the Sixth Circuit.  Again, in the most recent briefing, ACE requests that if this Court orders payment of defense costs, that this matter be stayed pending appeal.  (*See* Doc. 96 in Case No. 2:11-cv-1114).  ACE asserts that if ordered to pay Abercrombie's defense costs, such an order constitutes an injunction which is immediately appealable pursuant to 28 U.S.C. § 1292(a)(1). The Sixth Circuit has held that an order requiring an insurer to advance defense costs in an underlying action, while the coverage action is unresolved, is an immediately appealable injunction.  *See, e.g., Abercrombie & Fitch Co. v. Federal Ins. Co.*, 370 F. App'x 563 (6th Cir. Mar. 11, 2010) (finding that the District Court's order granting Abercrombie's motion for partial summary judgment with respect to the insurer's duty to pay defense costs constituted an immediately appealable order under 28 U.S.C. § 1292(a)(1)).

Pursuant to Rule 62 of the Federal Rules of Civil Procedure, the district court may stay the proceedings to enforce a judgment pending an appeal.  Rule 62(c) specifically grants authority to "suspend, modify, restore, or grant an injunction on terms for bond or other terms" while an appeal is pending from "an interlocutory order or final judgment that grants, dissolves, or denies an injunction. . . ."  In deciding whether to stay an order, district courts are instructed to weigh the following four factors:  "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the

public interest in granting the stay." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).

### 1.  Likelihood of Success on the Merits

No court is likely to find that an appellant has a high probability of succeeding on the merits of an appeal from its own judgment.  And if any Court did reach such a conclusion, it would probably favor judicial economy to exercise its inherent power to reconsider and reach a different outcome.  However, probability of success is somewhat misleading language; the Sixth Circuit said it better when it said that the movant need only demonstrate "serious questions going to the merits." *Michigan Coalition,* 945 F.2d at 153.  There is no question that this is a very important legal issue with a great deal of money at stake.  There are experienced attorneys on both sides of this case asserting valid legal arguments.  Without expressing a lack of confidence in its prior decision, the Court acknowledges that there are legitimate questions to be answered.

### 2.  Irreparable Harm to ACE

The injunctive order to provide a defense essentially requires ACE to involve itself in Abercrombie's defense – either by undertaking the defense directly or at least bringing itself up to speed on the litigation in order to make cost management and possibly settlement decisions. The time and effort involved in this is not insignificant and, if an appeals court were later to find that ACE owed no duty to defend, could never be recovered.  That is, it would likely be quite possible to recover from Abercrombie whatever actual payments ACE might be obliged to make in fulfilling its defense duty in the future.  But recompense for the transaction costs of assuming that duty could not justly be recovered from Abercrombie, or, indeed, from anyone.

### 3. Harm to Others

ACE asserts that granting a stay pending appeal preserves the status quo and does not cause harm to Abercrombie. Abercrombie, however, asserts that it has been harmed over the past three years and continues to be harmed. Abercrombie purchased a $5 million insurance policy from Ace so that it would be covered in events like those involved in the underlying actions. However, because of ACE's denial of coverage, Abercrombie has been forced to defend the underlying action, as well as litigate the coverage issue.

Financially, Abercrombie has been able to cover its cost of defense. It has done so for the past three years. Ultimately, if this Court's decision is upheld, Abercrombie will be reimbursed. Therefore, preserving the status quo and allowing ACE to pursue an appeal will not cause much more harm than what has already been endured by Abercrombie.

### 4. Public Interest

The Court agrees with Abercrombie that the public interest weighs heavily in favor of enforcing insurance contracts. However, as ACE argues, public interest also favors ascertaining liability first and requiring parties to pay once determined legally responsible. At this stage in the proceedings, it is equitable to allow an appeal to confirm the legal issues in this case.

After carefully considering the aforementioned factors, the Court finds that the equities weigh in favor of staying enforcement of this Court's Order on ACE's duty to defend during the appeal.

### G. Declaration of Frank Ray, Esq.

ACE has moved to exclude the declaration of Frank Ray produced by Abercrombie in support of its motion for attorneys fees and costs. Mr. Ray's declaration is being offered as evidence that the defense costs incurred in the underlying class actions were reasonable and

necessary.  ACE asserts that Mr. Ray's declaration does not comply with the requirements of Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 26(a)(2)(B) because the report is not based upon "sufficient facts or data," does not state the "basis and reasons" for the opinion, and does not identify the "data or other information" considered in forming his opinion. (Doc. 97, Mot. to Exclude).

Abercrombie, however, argues that ACE's purported bases for exclusion are unfounded. The Court agrees.  Mr. Ray is a very experienced and well-respected attorney with over forty years of civil litigation experience.  Mr. Ray has given his opinion based on his personal review of the billing statements in this case and his own personal experience.  Accordingly, ACE's motion to exclude the declaration of Frank Ray is denied.

### III.    CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Abercrombie's motions for fees and payment of defense costs; **GRANTS** ACE's motions to stay enforcement of the judgment while pursuing an appeal; and **DENIES** ACE's motion to exclude the expert declaration of Frank Ray.

The Clerk shall remove Documents 79, 84, 92, and 97 in Case No. 2:11-cv-1114, and Documents 49, 54, and 60 in Case No. 2:12-cv-1214 from the Court's pending motions list.

Enforcement of this Order requiring ACE to pay Abercrombie's cost of defense is hereby stayed pending appeal.  If affirmed on appeal, ACE is hereby ordered to pay Abercrombie's cost of defense to date within ten days of the issuance of the mandate.  If reversed, a status conference will be scheduled to discuss the remaining issues in the case.

**IT IS SO ORDERED.**

_____*/s/ George C. Smith*_____
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**